IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 JAN 24  A 11: 01

CLERK'S OFFICE
AT GREENBELT

BY _____

**DONNA WALKER**[1]
5200 Daybrook Circle, Apt. 359
Baltimore, Maryland 21237

         **Plaintiff,**

v.

**MARYLAND DEPARTMENT OF
INFORMATION & TECHNOLOGY**
100 Community Place
Crownsville, MD 21032

**SERVE: Brian E. Frosh, Attorney General**
200 St. Paul Place
Baltimore, Maryland 21202

**John C. Wobensmith, Secretary
Office of Secretary of State**
16 Francis Street
Annapolis, MD 21401

**Michael G. Leahy
Secretary of Information Technology**
100 Community Place,
Crownsville, MD 21032

         **Defendant.**

CIVIL ACTION NO.

CCB 20 CV 0219

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

Plaintiff Donna White ("Plaintiff"), through counsel, files this Complaint and Jury Demand against her employer, the State of Maryland Department of Information & Technology

---

[1] In 2019, Plaintiff Donna Walker changed her surname from White to Walker following the dissolution of her marriage.

1

(the "Defendant"). Plaintiff asserts claims for race and sex discrimination and retaliation under Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e *et seq.* and for disability discrimination, failure to accommodate and retaliation under the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADAAA") and the Rehabilitation Act of 1973, 29 U.S.C. §709 *et seq.* Specifically, Plaintiff states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that this action asserts violations of rights secured by the laws of the United States.

2. Venue is proper in this court pursuant to 28 U.S.C. §1391 as the events giving rise to this action occurred in the District of Maryland.

3. Prior to bringing this action, Plaintiff filed an administrative charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). Following its investigation, the EEOC found reasonable cause to believe that Defendant discriminated and retaliated against Plaintiff due to her disability and for her prior protected activity. *Exhibit A-EEOC Determination.* After conciliation failed, the EEOC then issued a Right to Sue Letter on October 28, 2019, which Plaintiff received on or about November 1, 2019. *Exhibit B-Right to Sue Letter.* This action was filed within 90 days of receipt of the EEOC's Right to Sue Letter.

4. At all relevant times, Plaintiff was employed by Defendant with the title of Webmaster Supervisor. However, her duties and responsibilities were non-supervisory and she performed the same job duties as Defendant's Webmasters.

5. The Defendant is an agency of the state of Maryland and is mainly responsible for creating and implementing information technology solutions to improve IT infrastructure and government services for all state agencies.

6. The Defendant receives federal financial assistance to operate programs as contemplated by 29 U.S.C. §794.

**FACTS COMMON TO ALL COUNTS**

7. Plaintiff is a black, female, who has engaged in protected activity. At all times, Plaintiff was a qualified individual with a disability, specifically, chronic migraine headaches that interfered with her ability to eat, see in natural light and drive an automobile. Despite her disability, Plaintiff performed her duties competently and received satisfactory ratings on her performance evaluations each year.

8. In or around 2016, Plaintiff was diagnosed with "chronic migraine headaches." Plaintiff's symptoms include nausea, vomiting, and extreme sensitivity to natural light. During an episode, Plaintiff is unable to see in sunlight or drive an automobile.

9. As a result of her disability, Plaintiff requested a reasonable accommodation on April 2016 and submitted documentation from her treating physician in support. Plaintiff requested: (1) telework two days a week as needed, (2) a permanent laptop computer for use when working at home and (3) that she be excused from staff meetings during a migraine episode.

10. At that time, Defendant's written telework policy stated that teleworking was encouraged for all employees for up to four days a month, either at home or at a satellite office. Defendant's policy also described teleworking as beneficial and desirable so "the State, as an employer, can lead the way to a cleaner environment through a more flexible and productive workplace."

11. Despite Defendant's teleworking policy, Defendant denied Plaintiff's requests for a reasonable accommodation on May 11, 2016 allegedly because Plaintiff was a "mission critical" employee who was needed in the office at all times.

12. Without engaging in the interactive process with Plaintiff to discuss other accommodations, Defendant then proposed different accommodations than Plaintiff's physician recommended. Specifically, that Plaintiff be permitted to telework only if she used a loaner laptop and provided 24 hours advance notice to her supervisor Anthony Burrows ("Mr. Burrows") of her need to telework and obtain prior approval from him. Defendant also proposed that Plaintiff reduce the number of visits to her clients' offices as a reasonable accommodation

13. At the time her reasonable accommodations were denied, Plaintiff had pending race discrimination and retaliation charges that she had filed in or around June 2015 and September 30, 2015 against Mr. Burrows and her manager Lan Pasek ("Ms. Pasek") with the EEOC. These same individuals made the decision to deny her reasonable accommodations.

14. Plaintiff realized that Defendant's proposed accommodation could not address her disability for several reasons. First, she could not predict when her migraines would come on 24 hours in advance and therefore was unable to obtain prior approval to telework from Mr. Burrows. Second, even if she could predict the onset of her migraines, she did not have a permanently assigned laptop at her home and could not work from home in any event. Finally, reducing the number of meetings with clients was not a reasonable accommodation and was necessary because her client's offices were closer to home than her workplace.

15. Further, Plaintiff believed that Defendant had denied her reasonable accommodations requests for discriminatory and retaliatory reasons because: (1) Defendant routinely allowed Plaintiff's colleagues, who were outside of her protected classes to telework

and to have permanently assigned computers rather than a loaner computer, including, but not limited to, Courtney Stewart (Caucasian, no disability), David Meyers (Caucasian, male, no disability) Jeffrey Keller (Caucasian, male, no disability), Hong Xia (Asian, no disability) and Jo Anne Moore (no disability). On information and belief, her colleagues had no prior protected activity and all worked in the same or similar positions as Plaintiff, (2) Unlike Plaintiff, however, the comparators did not need to obtain prior approval to telework or request a loaner laptop when they teleworked because management assigned them permanent laptops, (3) Plaintiff's comparators had not submitted medical documentation to support their need to telework like she had.

16. In fact, Plaintiff had in the past been permitted to telework on the same terms as her co-workers outside her protected classes while working in the same position. However, she lost her telework privileges due to discrimination as alleged in her EEOC complaints.

17. Believing she was being denied reasonable accommodations of her disability and treated differently than males and Caucasian employees and those without prior protected activity for discriminatory and in retaliatory reasons, Plaintiff filed a third EEOC charge against Defendant in or around December 2016. Her new charge alleged discrimination based on race, sex and disability, failure to accommodate, hostile work environment and retaliation.

18. While her EEOC charges were pending, Plaintiff submitted a second reasonable accommodation request and filed an internal discrimination and retaliation complaint in or around March 2017. As before, she needed workable reasonable accommodations for her disability because without them, she was forced to use episodic sick or annual leave under the Family Medical Leave Act as a reasonable accommodation.

19. On or about March 15, 2017, Defendant denied Plaintiff's reasonable accommodation request and dismissed her internal discrimination complaint. Plaintiff subsequently appealed the dismissal to Defendant's Statewide EEO Coordinator.

20. On or about March 2018, Defendant's EEO Coordinator denied Plaintiff's appeal and refused to take any steps to ensure that Plaintiff's disability was accommodated. As a result, the individuals against whom Plaintiff had filed three prior discrimination and/or retaliation complaints continued to deny Plaintiff's reasonable accommodations request to telework until September 2019 and in December 2019. In addition, Plaintiff has at all times up to and including today, been denied the opportunity to telework in Defendant's satellite office in Baltimore which is closer to her home. However, on information and belief, Mr. Burrows permitted Mary Russell Harris, who had not engaged in protected activity, to work in Defendant's satellite office in Baltimore.

21. After exhausting internal appeals, Plaintiff continued to wait for decisions from the EEOC regarding her discrimination and retaliation charges. In the meantime, the supervisor against whom Plaintiff had filed discrimination and retaliation complainants continued to refuse to accommodate Plaintiff's disability on the same terms as individuals outside of her protected classes between April 2017 and September 2019 and in December 2019. Currently, Plaintiff has been denied the opportunity to work in Defendant's satellite office in Baltimore as a reasonable accommodation.

22. During this over two-year period, Defendant did not engage in the interactive process with Plaintiff or request additional documentation from her physician to support her reasonable accommodation request to telework and for a permanent laptop. Defendant also did

not propose alternatives accommodations that would have adequately accommodated Plaintiff's disability.

23. As a result of Defendant's unlawful actions, Plaintiff was forced to take episodic leave under the Family Medical Leave Act to accommodate her disability. This caused her to exhaust her sick and annual leave whenever she could not drive to work in natural light due to her disability. If she had been approved for telework and given a permanent laptop like her comparators, she could have worked from home in a dark room during her migraine headache attack.

24. At all relevant times, Plaintiff was ready, willing and able to telework at home, but Defendant refused to allow her to telework as a reasonable accommodation without giving 24 hours advance notice to her supervisor and requesting a loaner laptop. However, her colleagues outside her protected classes were pre-approved for teleworking without advance notice and given permanent laptops. Accordingly, Plaintiff was denied the same terms and conditions of employment afforded to colleagues outside her protected classes between April 2017 and September 2019.

25. While this discrimination and retaliation was going on, the EEOC continued its investigation of Plaintiff's pending charges. On June 5, 2019, the EEOC then issued a finding of reasonable cause that Defendant violated discrimination laws. Among other things, the EEOC noted that Defendant subjected Plaintiff to unequal terms and conditions of employment in retaliation for her protected activity. *Exhibit A p. 1.* And that Defendant violated disability discrimination laws by denying Plaintiff a reasonable accommodation, while allowing "non-disabled employees, with similar job duties, to work remotely and from home, and justified its

denial based upon the preferences of [Plaintiff's] supervisor" against whom she had filed a discrimination complaint. *Id.* p. 1-2.

26. In the end, Defendant's race discrimination, sex discrimination, retaliation and failure to accommodate Plaintiff's disability caused her to suffer severe emotional distress, such that she developed anxiety and depression and needed medication to control her symptoms. In addition, Plaintiff lost approximately 30 pounds and became less social and reclusive due to Defendant's unlawful conduct.

27. She was also forced to exhaust her annual and sick leave and take leave without pay due to Defendant's refusal to accommodate her disability for discriminatory and retaliatory reasons.

## COUNT I
## RACE DISCRIMINATION AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII

28. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

29. In violation of Title VII, Defendant interfered with Plaintiff's benefits, privileges, terms and conditions of employment due to her race and sex.

30. For instance, Defendant denied Plaintiff the same opportunities as her white and/or male co-workers to telework and have a permanently assigned laptop. Defendant's unlawful conduct interfered with Plaintiff's ability to do her job on the same terms as her co-workers and caused her to have fewer assignments and clients than her co-workers.

31. Defendant's unequal treatment also forced Plaintiff to exhaust her annual and sick leave as well as take leave without pay when she needed to work from home. Comparators outside Plaintiff's protected classes were treated more favorably than Plaintiff.

32. As a result of the repeated and long-lasting unequal treatment over the course of four years, Plaintiff filed three discrimination complaints against her supervisor and manager in 2015 and 2016 alleging disparate work assignments, denial of telework and/or the opportunity to work in Defendant's satellite office in Baltimore which was closer to her home, denial of a permanent laptop computer and exclusion from meetings, among other things terms and conditions of employment.

33. Due to these events, Plaintiff suffered anguish, depression, anxiety, fear, humiliation, embarrassment, loss of self-esteem, loss of income, and other damages. She was also forced to take medication to control her anxiety and depression brought on by Defendant's unlawful conduct.

34. Defendant's conduct was malicious, willful and intentional and caused tangible harm to Plaintiff that affected the terms, conditions and privileges of her employment as compared to similarly situated co-workers outside her protected classes.

WHEREFORE, Plaintiff seeks pecuniary and nonpecuniary damages against Defendant in excess of $100,000 plus costs, interests, expenses, attorney fees and such additional relief as the Court deems just.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

35. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

36. In violation of Title VII, Defendant interfered with Plaintiff's terms, conditions, benefits and privileges of employment in retaliation for her protected activity.

37. Specifically, after Defendant was informed of Plaintiff's protected activity between 2015 and 2019, Defendant denied Plaintiff the same opportunities, benefits and

conditions of employment that were afforded to her co-workers with no prior protected activity as stated herein. Notably, Plaintiff had previously filed discrimination and retaliation complaints against her supervisor and manager, who were the individuals who made the decision to deny her reasonable accommodations request and treated her differently than persons outside her protected classes as described herein.

38. Because of Defendant's unequal treatment, Plaintiff was forced to exhaust her annual and sick leave and to take leave without pay. Comparators outside her protected classes, were allowed to telework or work in satellite offices and did not have to exhaust their leave or take leave without pay.

39. As a result of the repeated retaliation over the course of two years, Plaintiff filed a retaliation complaint against her supervisor in 2016 and was thereafter subjected to additional retaliation, including disparate work assignments, continued denial of telework on the same terms as her co-workers and a permanent laptop computer and exclusion from meetings, among other things.

40. Due to these events, Plaintiff suffered anguish, depression, anxiety, humiliation, embarrassment, loss of self-esteem, loss of income, and other damages. She was also forced to take medication to control her anxiety and depression brought on by Defendant's unlawful actions.

41. Defendant's conduct was malicious, willful and intentional and caused tangible harm to Plaintiff that affected the terms, conditions and privileges of her employment as compared to employees outside her protected classes.

WHEREFORE, Plaintiff seeks pecuniary and nonpecuniary damages against Defendant in excess of $100,000 plus costs, interests, expenses, attorney fees and such additional relief as

the Court deems just.

## COUNT III
## DISCRIMINATION AND RETALIATION
## UNDER THE ADAAA & REHABILITATION ACT

42. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

43. At all relevant times, Plaintiff was a qualified individual with a disability. And, Plaintiff had previously filed discrimination and retaliation complaints against her management, who had notice of her complaints prior to denying her reasonable accommodations request.

44. In subjecting Plaintiff to the unequal treatment described herein because of her disability and for having engaged in protected activity, Defendant violated the ADAAA and the Rehabilitation Act. In this regard, non-disabled employees were afforded better terms and conditions of employment than Plaintiff as stated herein and were not retaliated against. In addition, Plaintiff had previously filed discrimination and retaliation complaints against the individuals who made the disparate, adverse and retaliatory decisions.

45. As a result of the acts described herein, Plaintiff suffered from depression, anguish, anxiety, humiliation, insult, embarrassment, emotional pain, loss of self-esteem, loss of income, among other damages.

WHEREFORE, Plaintiff seeks pecuniary and nonpecuniary damages against Defendant in excess of $100,000 plus costs, interests, expenses, attorney fees and such additional relief as the Court deems just.

## COUNT IV
## FAILURE TO ACCOMMODATE
## UNDER THE ADAAA & REHABILITATION ACT

46. Plaintiff adopts and incorporates by reference all of the allegations set forth in the

previous paragraphs.

47. At all relevant times, Plaintiff was a qualified individual with a disability. Between 2015 and September 2019 and in December 2019, Plaintiff requested telework and a permanent laptop as reasonable accommodations for her disability.

48. Plaintiff's co-workers without disabilities were permitted to telework at home or an alternative work sites and were issued permanent laptops by Defendant. However, Defendant denied Plaintiff's requested accommodations and proposed accommodations that were inadequate to address Plaintiff's disability and that were less favorable than the privileges extended to her comparators as described herein. Defendant also failed to engage in without the interactive process with Plaintiff or her physician to determine if its proposed accommodations would accommodate her disability

49. For example, Plaintiff was denied telework and a permanent laptop on the same terms as her comparators and given disparate work assignments. Thus, Defendant violated the ADAAA and the Rehabilitation Act by affording better terms and conditions of employment to Plaintiff's comparators as stated herein.

50. As a result of the acts described herein, Plaintiff suffered from depression, anguish, anxiety, humiliation, embarrassment, loss of self-esteem and loss of income, among other damages.

WHEREFRORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant for:

    A.    Damages in excess of $100,000 or such other amount as determined at the trial of this matter;
    B.    Costs, interest, and expenses as required by law.
    C.    Plaintiff's attorneys' fees; and
    D.    Such other and further relief as this Court deems necessary based upon the facts and circumstances of this case.

Dated: January 24, 2020

Respectfully submitted,

/s/ Janice Williams-Jones
Janice Williams-Jones (#25701)
Law Office of Janice Williams-Jones
3545 Ellicott Mills Drive, Suite 308
Ellicott City, Maryland 21043
Ph: 410-203-1246
Fax: 410-203-2301
Lawofficeofjwjones@gmail.com

Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff requests that all matters in this case be tried by a jury.

Dated: January 24, 2020

Respectfully submitted,

/s/ Janice Williams-Jones
Janice Williams-Jones (#25701)
Law Office of Janice Williams-Jones
3545 Ellicott Mills Drive, Suite 308
Ellicott City, Maryland 21043
Ph: 410-203-1246
Fax: 410-203-2301
Lawofficeofjwjones@gmail.com

Counsel for Plaintiff