IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONNA WALKER | * | |
| | * | Civil Action No. CCB-20-219 |
| v. | * | |
| | * | |
| MARYLAND DEPARTMENT OF | * | |
| INFORMATION AND TECHNOLOGY | * | |
| | * | |

**MEMORANDUM**

This civil rights action involves a dispute between Donna Walker and her employer, the Maryland Department of Information and Technology (the "Department"), over an alleged failure to make reasonable workplace accommodations. Before the court is the Department's motion to dismiss (ECF 11). The matter has been fully briefed and no oral argument is necessary. *See* Local Rule 105(6). For the reasons discussed herein, the motion will be granted in part and denied in part.

**FACTS AND PROCEDURAL HISTORY**

Donna Walker is employed at the Maryland Department of Information and Technology. (ECF 1, Compl., ¶¶ 4–5, 7). Her job title is "webmaster supervisor," though she states her duties are non-supervisory and the same as the other webmasters. (*Id.* ¶ 4). Walker is a black female who suffers from chronic migraine headaches which, during a migraine episode, interfere with her ability to eat, to see in natural light, and to drive an automobile. (*Id.* ¶¶ 7–8).

In April of 2016, following her diagnosis, Walker requested, as reasonable accommodations, permission to telework two days a week as needed, a permanent laptop computer for use when working at home, and excusal from staff meetings during a migraine episode. (*Id.* ¶ 9). At the time, the Department's written telework policy stated that teleworking was encouraged for all employees for up to four days a month, either at home or at a satellite

1

office.  (*Id.* ¶ 10).  Her supervisor, Anthony Burrows, and her manager, Lan Pasek, denied Walker's request on May 11, 2016, because Walker was a "mission critical" employee needed in the office at all times.[1]  (*Id.* ¶ 11).  They proposed different accommodations contrary to Walker's physician's recommendations: permitting telework only if Walker used a loaner laptop and provided twenty-four hours advance notice to Burrows, and reducing visits to her clients' offices.  (*Id.* ¶ 12).  According to Walker, these accommodations were not acceptable.  (*Id.* ¶ 14).  Since she could not predict the onset of a migraine a day in advance, she would be unable to obtain access to a loaner laptop or to obtain prior approval to work from home.  (*Id.* ¶ 14).  Additionally, reducing the number of meetings with clients was not necessary because her clients' offices were closer to her home than her workplace.  (*Id.* ¶ 14).

Without reasonable accommodations, Walker states that she was forced to use episodic sick or annual leave under the Family and Medical Leave Act.  (*Id.* ¶ 18).  Walker alleges that her colleagues outside of her protected classes were allowed to telework without prior approval and to have permanently assigned computers, even though they did not submit medical documentation to support their need for telework as Walker had.  (*Id.* ¶ 15).  Walker provides the following comparators: "Courtney Stewart (Caucasian, no disability), David Meyers (Caucasian, male, no disability), Jeffrey Keller (Caucasian, male, no disability), Hong Xia (Asian, no disability), and Anne Moore (no disability)," all of whom Walker believes had no prior protected activity, and all of whom worked "in the same or similar positions" as Walker.  (*Id.*)

---

[1] Prior to this dispute, in June of 2015 and on September 30, 2015, Walker filed race discrimination and retaliation charges against Burrows and Pasek with the EOOC.  (ECF 1, Compl., ¶ 13).  The substance of those charges is not at issue here, though Walker alleges she had previously been permitted to telework on the same terms as her co-workers, and lost her telework privileges due to discrimination, which it appears was alleged in those prior EEOC complaints.  (*Id.* ¶ 16).

Walker filed an EEOC charge against the Department in December of 2016, alleging discrimination on the basis of race, sex, and disability; failure to accommodate; hostile work environment; and retaliation. (*Id*. ¶ 17). In March of 2017, while her December 2016 EOOC Charge was still pending, Walker filed with the Department a second reasonable accommodation request and an internal discrimination and retaliation complaint. (*Id*. ¶ 18). The request was denied, and the complaint was dismissed on or about March 15, 2017. (*Id.* ¶ 19). Walker appealed the dismissal to the Department's EEO coordinator, who denied the appeal. (*Id.* ¶¶ 19–20).

On June 5, 2019, the EEOC issued a finding of reasonable cause that the Department subjected Walker to unequal terms and conditions of employment in violation of Title VII's retaliation provisions and the ADA's failure to accommodate provisions. (ECF 1-2, Ex. A, EEOC Determination, at 2–3). The EEOC then issued Walker a notice of her right to sue on October 28, 2019. (ECF 1-3, Ex. B, Right to Sue Letter).

Walker brought this action on January 24, 2020, seeking damages in excess of $100,000 and alleging four counts: (1) race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation in violation of Title VII; (3) discrimination and retaliation under the Americans with Disabilities Act Amendments Act ("ADAAA") and the Rehabilitation Act; and (4) failure to accommodate under the ADAAA and the Rehabilitation Act. (ECF 1 at 8, 9, 11).

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

3

(2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"[2] *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

### I.     Title VII Claims

Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Further, Title VII makes it unlawful for an employer to retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice" under Title VII, or because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to Title VII. 42 U.S.C. § 2000e-3(a). In Counts I

---

[2] The Fourth Circuit Court of Appeals has clarified that plaintiffs are not required to plead facts sufficient to establish a prima facie case to survive a motion to dismiss. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). This is because a prima facie case is an evidentiary standard rather than a pleading standard. *Id*. Therefore, plaintiffs are required only to allege facts to plausibly satisfy the elements of a cause of action created by the relevant statute. *Id.*

and II, Walker alleges that the Department violated both of these provisions. The court will evaluate each in turn.

   *A. Discrimination*

To state a claim for discrimination under Title VII, a plaintiff must plausibly allege: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012).

In this case, Walker argues that the Department discriminated against her on the basis of her race and her sex by denying her "the same opportunities as her white and/or male co-workers to telework" or to "work in Defendant's satellite office" and to "have a permanently assigned laptop." (ECF 1 ¶¶ 30, 32). In response, the Department contends that Walker fails to (1) allege an adverse employment action; (2) allege any named individuals are similarly situated comparators; (3) identify any actual comparators who have been treated differently; or (4) allege that any specific action was taken or not taken on the basis of Walker's race or sex. (ECF 11-1, Mot. to Dismiss, at 12). The court agrees that Walker has failed to properly plead either an adverse employment action or different treatment.

For the purposes of a Title VII discrimination claim, an adverse employment action is one that adversely "affect[s] employment or alter[s] the conditions of the workplace." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006); *see also Laird v. Fairfax Cty., Va.*, --- F.3d ---, No. 18-2511, 2020 WL 6228005, at *4 (4th Cir. Oct. 23, 2020). In other words, it is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007).

Typical adverse employment actions are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibilities, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Nevertheless, even where an employer's conduct does not amount to an ultimate employment action, it may nonetheless be sufficiently adverse if it plausibly had a tangible effect on the terms and conditions of employment. *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012). Still, as courts in this circuit have frequently held, an employer's refusal to allow a flex schedule or telework arrangement, without more, does not rise to the level of an adverse employment action. *See Terry v. Perdue*, No. JKB-18-31, 2018 WL 4494883, at *5 (D. Md. Sept. 19, 2018) (collecting cases); *see also Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (removal from an alternate work schedule was not adverse action); *Lee v. Mattiss*, No. PX-17-2836, 2018 WL 3439261, at *9 (D. Md. July 17, 2018) (noting that "mere refusal to allow telecommuting is not actionable under Title VII" but holding that denial of telecommuting in addition to allegations of excessive criticism, disparate assignment of overtime work, and denial of leave constituted adverse employment action); *Dailey v. Lew*, No. GLR-15-2527, 2016 WL 1558150, at *5–6 (D. Md. Apr. 18, 2016) (no adverse action where defendant suspended plaintiff's telework arrangement), *aff'd*, 670 F. App'x 142 (4th Cir. 2016); *Carter v. Va. Dep't of Game & Inland Fisheries*, No. MHL-16-0661, 2017 WL 4413192, at *13 (E.D. Va. Sept. 29, 2017) (no adverse action where employer refused to allow a flex schedule or telecommuting).[3]

Walker has failed to adequately plead an adverse employment action for the purposes of her Title VII discrimination claim. While Walker was denied not just a telework arrangement, but also the permanent use of a laptop and the ability to work from a satellite office, these actions

---

[3] Unpublished opinions are cited for the soundness of their reasoning rather than for their precedential value.

are incidental to the denial of teleworking and therefore do not rise to the level of an adverse employment action.  And though Walker alleges she was forced to use sick leave and take leave without pay, and that she had received fewer assignments and clients than her co-workers, her complaint indicates that these were concomitant effects of the denial of teleworking privileges rather than independent acts of her employer.  (*See* ECF 1 ¶ 18 ("As a result of Defendant's unlawful actions, Plaintiff was forced to take episodic leave."); *id.* ¶ 30 ("Defendant's unlawful conduct . . . caused her to have fewer assignments and clients than her co-workers.")).[4]  Further, as the Department's then-existing policy was to encourage teleworking, (*id*. ¶ 10), the denial of such privileges does not appear to have had an adverse effect on the terms or conditions of her employment.  *Holland*, 487 F.3d at 219.

Additionally, to state a claim for discrimination under Title VII, "a plaintiff who bases her allegations entirely upon a comparison to an employee from a non-protected class must demonstrate that the comparator was similarly situated in all relevant aspects." *Sawyers v. United Parcel Service*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013) (internal quotation omitted); *see also Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).  A showing of similarity "would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . .  engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Haywood*, 387 F. App'x at 359 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577,

---

[4] Walker cites Lee v. Mattis, No. PX-17-2836, 2018 WL 3439261 (D. Md. July 27, 2018) for the proposition that restricting telework privileges in such a way as to cause a loss of wages, accrued leave, and work assignments is sufficient to show a materially adverse action.  (ECF 14 at 13).  But the plaintiff in that case "avers much more," specifically that there was (1) excessive micromanagement, (2) excessive criticism, (3) an unreasonable workload, (4) disparate assignment of overtime work, and (5) denial of leave.  *Lee*, 2018 WL 3439261, at *9.  Further, the plaintiff in Lee did not allege, as Walker appears to, that the loss of telework *caused* these other injuries, but rather that all of those discrete injuries collectively constituted an adverse employment action.

7

583 (6th Cir. 1992). Comparators need not be identical, though they must be similar in all relevant aspects, including conduct, performance, and qualifications. *Id*.

Walker has also failed to adequately plead that she was similarly situated in all relevant aspects to her comparators. Her complaint lists five purported comparators, along with a parenthetical description of an inconsistent combination of the comparator's race, sex, and disability: two are white males without disabilities; one is white without a disability, but no sex is listed; one is Asian without a disability, but no sex is listed; and one has no disability, but no race nor sex is listed. (*See* ECF 1 ¶ 15). As Walker alleges she is a black female who has been discriminated against on the basis of her race and her sex, only the two white males lie entirely outside of her protected classes. (*Id*. ¶¶ 7, 29). Significantly, her complaint alleges only that the Department—and not Burrows, her supervisor—was responsible for "allow[ing] [her] colleagues . . . to telework and to have permanently assigned computers." *See Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007) ("If different decision-makers are involved, employees are generally not similarly situated."); *see also Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (holding that plaintiff had failed to adduce evidence to survive summary judgment because she had not, among other things, "shown that any comparators were supervised by the same supervisor"). Nor is it clear from the complaint which of the alleged comparators held Walker's position of webmaster supervisor, since the complaint only generally alleges that the comparators "worked in the same or similar positions." (ECF 1 ¶ 15). Finally, Walker does not assert that the two white male comparators listed in her complaint were also designated "mission critical," which was the Department's stated rationale for denying her telework privileges. *See Haywood*, 387 F. App'x at 359 (noting that substantial similarity may be shown by evidence that employees were subject to the same

standards without "differentiating" circumstances that would distinguish "the employer's treatment of them for it.").

Therefore, the court does not find that Walker has plausibly alleged she was treated differently from her comparators on account of her race or her sex. Accordingly, her Title VII discrimination claim will be dismissed.

### B. Retaliation

To state a claim for retaliation under Title VII, the plaintiff must plausibly allege that: (1) she engaged in a protected activity; (2) her employer took an adverse action against her; and (3) a causal relationship existed between the protected activity and the adverse employment activity. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Here, the Department argues that Walker's complaint is deficient in alleging each of these elements. (*See* ECF 11-1 at 19–23). The court disagrees.

Protected activities may be classified as "participation" or "opposition." 42 U.S.C. § 2000e-3(a). Participation includes making a formal EEOC charge. *Id.* Making use of informal grievance procedures and speaking up against an employer's discriminatory activity are examples of "opposition." *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures . . . and voicing one's opinions in order to bring attention to an employer's discriminatory activities."). Walker clearly alleges that she engaged in protected activity insofar as she filed an EEOC charge in 2016 alleging "discrimination based on race, sex and disability," and an "internal discrimination and retaliation complaint" in 2017. (ECF 1 ¶¶ 13, 17, 18).[5]

---

[5] The Department asserts that only the EEOC charge could constitute protected activity, as "[b]ased upon the context of the allegation, [the internal complaint] appears to only relate to her disability, which is not made unlawful by Title VII." But at the motion to dismiss stage, the court is required to construe the complaint in the light most favorable

Though Walker did not adequately allege an adverse action for the purposes of her discrimination claim, "what qualifies as an 'adverse action' differs slightly" for a retaliation claim.  *Laird*, 2020 WL 6228005, at *4.  In the context of a retaliation claim, a plaintiff can demonstrate that an employer acted adversely by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotation marks and citations omitted); *see also Laird*, 2020 WL 6228005, at *4.  Whether an action is materially adverse "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  *Burlington*, 548 U.S. at 71; *see also Bacchus v. Price*, No. GJH-17-1511, 2018 WL 3575055, at *9–10 (D. Md. July 25, 2018) (holding that denial of telework, under circumstances forcing the plaintiff to use accrued leave and adhere to a rigid work schedule where others were routinely granted accommodations, was sufficient to plead a materially adverse action); *Terry v. Perdue*, 2018 WL 4494883, at *6 (holding that cancelling Mondays off and denying a request for a flexible schedule would be sufficient to dissuade a reasonable worker from making a discrimination charge).

In this case, Walker has alleged that she was (1) denied the opportunity to work from home, (2) given "disparate work assignments," and (3) excluded from meetings.  (ECF 1 ¶ 39). As in *Bacchus*, Walker's allegations "set[] forth a scenario" where a supervisor forced a plaintiff to "adhere to a rigid work schedule while others were routinely granted accommodations." *Bacchus*, 2018 WL 3575055, at *10.  As the Supreme Court stated in *Burlington*, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may

---

to the plaintiff, and therefore the court will assume for the purposes of resolving this motion that Walker's internal complaint grieved activity made unlawful under Title VII and thus that it constitutes protected activity.

matter enormously to a young mother with school-age children." 548 U.S. at 69.  For a reasonable person in Walker's position, suffering from chronic migraines that make driving a car untenable, the denial of telework may likewise "matter enormously."  At this stage, the court accepts that it is plausible that the denial of telework is a materially adverse employment action capable of deterring a reasonable employee from making a charge of discrimination.

Finally, a plaintiff must plead that his or her protected activity constituted the "but-for" cause of the materially adverse employment action taken by the employer.  *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  Temporal proximity between the protected activity and the adverse employment action can show a causal link: "Although we have not drawn a bright temporal line, we have observed that two and a half months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation between the two events' in the absence of other evidence of retaliation." *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *see also Foster*, 787 F.3d at 253 (complaint of discrimination one month before termination was sufficient to create jury question regarding causation).

Here, Walker alleges that she engaged in a few instances of protected activity.  First, in December of 2016 Walker filed an EEOC charge alleging discrimination on the basis of race, sex, and disability.  (ECF 1 ¶ 17).  This was followed by an "internal discrimination and retaliation complaint" which she filed in March of 2017.  (*Id.* ¶ 18).  Subsequently, "[o]n or about March 15, 2017," her accommodation request was denied by the Department.  (*Id.* ¶ 19).  Therefore, assuming Walker's EEOC charge, which alleged discrimination made unlawful by Title VII, was filed at the end of December, the period from the filing of the charge to the denial of her request was just two-and-a-half months.  Additionally, her internal grievance was filed

11

within, at most, a few weeks of the denial of her request. Though her complaint is unclear as to whether the internal grievance alleged discrimination on the basis of sex and race or just disability, the court must construe the complaint in the light most favorable to Walker and will therefore assume it grieved actions made unlawful by Title VII, just as the EEOC charge did a few months prior. Accordingly, Walker has sufficiently alleged causation by pointing to the close temporal proximity between (1) her EEOC Charge and the denial of her request for accommodations and (2) her internal grievance and the denial of her request for accommodations.

In sum, Walker has plausibly alleged that she engaged in protected activity, she suffered an adverse employment decision, and there was a causal nexus between the two. As a result, she has stated a Title VII retaliation claim, and the court will deny the Department's motion to dismiss as to that claim.

## II.     Rehabilitation Act Claims

The Rehabilitation Act aims to ensure that no disabled person "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act also incorporates the ADAAA's anti-retaliation provision, which prohibits "discrimination against any individual because she has opposed any act or practice made unlawful by" the ADAAA. 42 U.S.C. § 12203(a). Courts evaluate employment discrimination claims brought under the Rehabilitation Act using the same standards as those applied under Title I of the ADA. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015). In Counts III and IV, Walker asserts claims under the

Rehabilitation Act for discrimination, retaliation, and failure to accommodate. The court will address each in turn.

### A. Discrimination

To state a claim for discrimination under the Rehabilitation Act, a plaintiff must allege: (1) she has a disability; (2) she is otherwise qualified for her employment; and (3) she suffered an adverse employment action solely by reason of her disability. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015).

In this case, the Department challenges only the third element, and questions whether the stated employment action is sufficiently adverse. (*See* ECF 11-1 at 27). For the reasons described herein with regard to Walker's discrimination claim under Title VII, the adverse employment action alleged with regard to her discrimination claim under the Rehabilitation Act is likewise insufficient. Accordingly, the court will grant the Department's motion to dismiss as to Walker's discrimination claim under the Rehabilitation Act.

### B. Retaliation

To state a claim for retaliation under the Rehabilitation Act, a plaintiff must allege that: (1) she engaged in a protected activity; (2) the defendant took an adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. *See A Society Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011) (stating the standard for retaliation under the ADAAA); *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (outlining the same standard for retaliation under the Rehabilitation Act).

In this case, the Department contends that Walker does not sufficiently allege the second and third elements. (*See* ECF 11-1 at 28). With regard to the second element, as explained above, the court accepts that it is plausible that the denial of telework is a materially adverse

employment action capable of deterring a reasonable employee from making a charge of discrimination.  With regard to the third element, as also explained above, Walker's EEOC charge alleged discrimination on the basis of disability and, though her complaint is somewhat ambiguous on this point, the court will assume that Walker's internal grievance referenced activity made illegal under the ADAAA and the Rehabilitation Act.  Because both of those protected activities came within two and a half months of the alleged adverse action (and because one of them came within weeks of the adverse action), Walker has sufficiently alleged a causal nexus.  Accordingly, she has stated a claim for retaliation under the Rehabilitation Act and the court will deny the Department's motion as to this claim.

> C. *Failure to Accommodate*

To state a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must allege: (1) she was a qualified person with a disability; (2) the employer had notice of her disability; (3) the plaintiff could perform the essential functions of her position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation.  *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019).

In this case, the Department appears to contest only the third and fourth elements, primarily on the grounds that "Walker has acknowledged that the Department provided reasonable accommodations."  (ECF 11-1 at 29–30).  While Walker did acknowledge that the Department "proposed different accommodations than [her] physician" proposed, she also alleged that the Department's proposed accommodations "could not address her disability." (ECF 1 ¶¶ 12, 14).

Construed in the light most favorable to her, Walker has sufficiently alleged a failure to accommodate under the Rehabilitation Act.  Specifically, she alleges that her disability gives her

14

nausea, induces vomiting, and causes an extreme sensitivity to light such that she is unable to see in sunlight or to drive a car; that she notified her employer of this disability as early as April of 2016; that she requested reasonable accommodations and supplied supporting medical documentation; that she was ready and able to telework from home; and that the Department refused to grant her the requested accommodations, refused to engage in the interactive process, and instead proposed inadequate accommodations. (ECF 1 ¶¶ 8, 9, 24, 47, 48). Thus, it appears that Walker has alleged that she could perform the essential functions of her position with the requested accommodations and that the Department nevertheless refused to make the accommodations.[6]

Accordingly, the court will deny the Department's motion to dismiss as to Walker's claim under the Rehabilitation Act for failure to accommodate.

### III. ADAAA Claims

The Eleventh Amendment establishes that states may not be sued by private individuals in federal court except in two situations: after consent by the state, or under an abrogation of state sovereign immunity by Congress acting pursuant to a valid exercise of its power. *Bd. of Trustees of Univ. of Al. v. Garrett*, 531 U.S. 356, 363–64 (2001); *see also McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). This protection extends to state agencies. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

In this case, the Department is a "principal department of State government" and is therefore entitled as an arm of the state to claim immunity. Md. Code. Ann., State Fin. & Proc. §

---

[6] The Department also contends that the failure to accommodate claim is deficient because the complaint fails, among other things, to state that the accommodations were necessary or to identify the essential functions of her job. (*See* ECF 11-1 at 30). Given Walker's allegations that the incidence of a migraine for her causes an inability to commute to her job, Walker has stated that accommodations were necessary. And as explained previously, Walker need only plead facts sufficient to state a plausible claim for relief. This much she has done.

15

3A-201. Walker does not argue, nor is it apparent to the court from its own research, that Maryland or the Department has waived immunity for actions arising under the federal employment laws.[7] Therefore, Walker's claims under the ADAAA will be barred so long as Congress has not abrogated immunity. The Department contends—and Walker does not appear to contest—that Congress has not done so. (*See* ECF 11-1 at 24; *see generally* ECF 14, Pl.'s Opp. to Mot. to Dismiss).

The ADAAA does purport to abrogate state sovereign immunity. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment . . . from an action in Federal or State court . . . for a violation of this chapter."). Nevertheless, the Supreme Court has decided that this was not a valid exercise of Congressional power, and that sovereign immunity has not been abrogated for claims brought under Title I of the ADA,[8] because "[t]he legislative record of the ADA . . . simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *See Garrett*, 531 U.S. at 368, 374; *see also McCray*, 741 F.3d at 483. Nor did Congress properly abrogate immunity for claims brought under Title V of the ADA. *See Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001) ("There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled,"

---

[7] This is so notwithstanding Maryland's waiver of state sovereign immunity in employment discrimination cases, which forbids the state or its officers from "rais[ing] sovereign immunity as a defense against an award in an employment discrimination case *under this title*." Md. Ann. Code, State Govt., 20-903 (emphasis added).

[8] Walker alleges generally that the Department's actions are in violation of the ADAAA. The court assumes, given the gravamen or her allegations, that Title I (Employment) and Title V (Miscellaneous Provisions) are the governing provisions, rather than Title II (Public Services), Title III (Public Accommodations), or Title IV (Telecommunications). The court also notes that although *Garrett* was decided before Congress passed the ADAAA and the President signed it into law, the act's legislative findings do not mention *Garrett* or the states' Eleventh Amendment immunity, and Congress has not remedied the deficiencies identified in *Garrett* with respect to developing a record of irrational state discrimination against the disabled. *Accord O'Donnell v. Pa. Dep't of Corr.*, 790 F. Supp. 2d 289, 297 n.9 (M.D. Pa. 2011).

16

without which "Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims.").

Accordingly, the court will dismiss Walker's ADAAA claims.

## CONCLUSION

For the reasons stated herein, the Department's motion to dismiss will be granted in part and denied in part. Walker's Title VII discrimination claim, Rehabilitation Act discrimination claim, and ADAAA claims will be dismissed, and Walker's retaliation claim under Title VII and her retaliation and failure to accommodate claims under the Rehabilitation Act may proceed. A separate order follows.

   11/2/20
Date

/S/
Catherine C. Blake
United States District Judge